**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

VERONICA JOHNSON and KIERON
JOHNSON, individually, and as parents
and natural guardians of K.J., a minor,

Plaintiffs,

vs.

UNITED STATES OF AMERICA,

Defendant.

Case No.:
26-1924

## COMPLAINT FOR DAMAGES UNDER
## THE FEDERAL TORT CLAIMS ACT

The Plaintiffs, VERONICA JOHNSON, individually, and KIERON JOHNSON, individually, and as parents and natural guardians of K.J., a minor, by and through their undersigned attorneys, hereby sue the Defendant, UNITED STATES OF AMERICA (the "United States"), and allege as follows:

## PARTIES

1.      Plaintiff, VERONICA JOHNSON, is a natural person over the age of eighteen (18) years, a resident of the State of Florida, and is otherwise sui juris.

2.      Plaintiff, KIERON JOHNSON, is a natural person over the age of eighteen (18) years, a resident of the State of Florida, and is otherwise sui juris.

3.      Plaintiffs, VERONICA JOHNSON and KIERON JOHNSON, are the parents and natural guardians of K.J., a minor, and bring this action both individually and on behalf of K.J.

1

4.    K.J. is a minor child, born January 12, 2022, and a resident of the State of Florida. K.J. is identified by initials to protect the privacy of the minor.

5.    At all times material, Kimona Baker, CNM, was employed by Suncoast Community Health Centers, Inc. (a/k/a Suncoast Healthcare Women's Care) ("Suncoast"), a deemed federally supported health center, and was acting within the course and scope of that employment. As set forth below, Ms. Baker is deemed an employee of the Public Health Service under 42 U.S.C. § 233, and the United States is the sole and only proper defendant to this action. Neither Suncoast nor Ms. Baker is named as a defendant.

## JURISDICTION AND VENUE

6.    This action is brought against the United States pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2401(b), and 2671–2680.

7.    This Court has exclusive subject-matter jurisdiction under 28 U.S.C. § 1346(b)(1), which vests the United States district courts with jurisdiction over civil actions on claims against the United States for money damages for personal injury caused by the negligent or wrongful act or omission of an employee of the Government while acting within the scope of employment, under circumstances in which the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

8.    Because the acts and omissions complained of occurred in the State of Florida, the substantive law of Florida supplies the standard of care and the rules of liability, and the United States is liable to the same extent as a private individual under like circumstances. 28 U.S.C. § 1346(b).

9.    Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1402(b) because the acts and omissions forming the basis of this claim occurred at Lakeland Regional

2

Medical Center in Polk County, Florida, which lies within this District. Assignment to the Tampa Division is proper because Polk County lies within the Tampa Division of this District.

## CONDITIONS PRECEDENT AND ADMINISTRATIVE EXHAUSTION

10.     All conditions precedent to the institution and maintenance of this action have been satisfied, have occurred, or have been waived.

11.     Plaintiffs presented their administrative tort claims to the United States Department of Health and Human Services ("HHS"), the appropriate federal agency, by submitting executed Standard Form 95 claims, accompanied by a written statement of the basis of the claims, on or about December 13, 2023.

12.     Each administrative claim was presented in a sum certain, as follows: the claim of K.J., a minor, in the amount of $75,000,000.00; the claim of Veronica Johnson in the amount of $10,000,000.00; and the claim of Kieron Johnson in the amount of $10,000,000.00.

13.     The administrative claims were presented to HHS within two (2) years after the claims accrued, in compliance with 28 U.S.C. § 2401(b).

14.     More than six (6) months have elapsed since the presentment of the administrative claims, and HHS has not made a final disposition of the claims. Plaintiffs therefore deem the claims finally denied and exercise their right to file suit pursuant to 28 U.S.C. § 2675(a).

15.     Plaintiffs have fully complied with the presentment and exhaustion requirements of 28 U.S.C. § 2675(a) as to the United States, which are satisfied solely by the administrative claims presented to HHS and described above.

16.     As to the healthcare-provider defendants named in the parallel state-court action, Plaintiffs complied with all conditions precedent set forth in Chapter 766, Florida Statutes,

3

including the presuit investigation and notice requirements governing claims for medical negligence. The underlying matter was properly presuited under both federal and Florida law.

17.    The United States did not participate in the Florida Chapter 766 presuit process. Federal exhaustion as to the United States is governed solely by 28 U.S.C. § 2675(a), which Plaintiffs have satisfied as alleged above.

## FEDERALLY SUPPORTED HEALTH CENTER (DEEMING) ALLEGATIONS

18.    At all times material, Suncoast Community Health Centers, Inc. (a/k/a Suncoast Healthcare Women's Care) was a federally supported health center whose officers, governing board members, employees, and eligible contractors are, upon deeming, treated as employees of the Public Health Service under the Federally Supported Health Centers Assistance Act of 1992, Pub. L. No. 102-501, made permanent by the Act of 1995, Pub. L. No. 104-73, and codified at 42 U.S.C. § 233(g)–(n).

19.    At all times material, Suncoast was deemed to be an employee of the Public Health Service, and its eligible employees, including Kimona Baker, CNM, were deemed federal employees eligible for coverage under the FTCA.

20.    At all times material, Kimona Baker, CNM, was an employee of Suncoast and was acting within the course and scope of her employment when she rendered the care and treatment at issue in this Complaint.

21.    Consequently, pursuant to 42 U.S.C. § 233(a), the remedy against the United States under the FTCA is exclusive of any other civil action or proceeding for the conduct at issue, and the United States is the only proper defendant.

## EVENTS FORMING THE BASIS OF THE CLAIM

22.     In or about April 2021, Veronica Johnson learned that she was pregnant and began receiving prenatal care from Suncoast. By all accounts, her prenatal course was normal and without complication. Her estimated due date was January 14, 2022.

23.     On the evening of January 11, 2022, Veronica Johnson began having contractions and was taken to Lakeland Regional Medical Center ("LRMC") in Polk County, Florida, where she was admitted at approximately 7:25 p.m.

24.     Upon admission, Ms. Johnson was followed by Kimona Baker, CNM, an employee of Suncoast, together with the LRMC nursing staff. CNM Baker acted as Ms. Johnson's "attending" and was expected to perform the ultimate delivery.

25.     Beginning on the evening of January 11, 2022, the fetal heart rate ("FHR") tracings became non-reassuring. The baby became tachycardic, with a baseline heart rate of 180 beats per minute and above, and the FHR tracings showed variable decelerations, late decelerations, prolonged decelerations, and minimal to absent variability. These non-reassuring findings persisted and worsened over the course of Ms. Johnson's labor.

26.     On the three-tier system used in the medical community to classify FHR tracings, the baby's tracings were, at best, "Category II", that is, neither normal (Category I) nor the most severe (Category III) as defined by the National Institute of Child Health and Human Development ("NICHD") FHR classification system. Ms. Johnson's tracings remained non-reassuring and Category II, at best, for the majority of her labor.

27.     The scope of practice of a certified nurse midwife ("CNM") is limited to managing patients with normal labors and reassuring FHR tracings who are expected to require a routine, non-operative delivery. Ms. Johnson's non-reassuring, Category II tracings, and the complexity of

her labor and delivery, exceeded the scope of a CNM's practice and required that an obstetrician-gynecologist ("OB-GYN") capable of performing an operative delivery (cesarean section) take over her care.

28.     Throughout her shift, CNM Baker never summoned an OB-GYN to take over the management of Ms. Johnson's pre-delivery care and delivery and never notified or requested the presence of a collaborating physician. CNM Baker further failed to recognize and appropriately address the non-reassuring FHR decelerations and failed to timely and appropriately initiate and utilize the available intrauterine resuscitation measures.

29.     CNM Baker continued to follow Ms. Johnson's labor through the early morning of January 12, 2022, until her shift ended and she left the hospital at approximately 7:30 a.m. During that time, the FHR tracings continued to show repetitive variable decelerations with minimal variability and remained a Category II tracing.  There is no indication in the records or in the prior testimony of Marsha Watkins, CNM and the nursing staff that CNM Baker knew, acknowledged or notified the incoming nurse midwife, Marsha Watkins, CNM, of the complexity of the patient's labor and/or the fact that the patient's labor exceeded the scope of care a nurse midwife in Florida can provide.

30.     At approximately 8:30 a.m. on January 12, 2022, Marsha Watkins, CNM, a certified nurse midwife employed by a separate, private entity and not a deemed federal employee took over as Ms. Johnson's "attending" and, with the LRMC nursing staff, followed Ms. Johnson through delivery. The FHR tracings remained Category II, at best, with repetitive variable, late, and prolonged decelerations and poor variability, indicative of compromised blood and oxygen flow to the baby, consistent with a possible nuchal cord.

31.     The decelerations the non-reassuring decelerations continued until the baby was delivered vaginally by Marsha Watkins, CNM.  In the minutes prior to delivery, CNM Watkins announced that the baby was "stuck".  Although the baby encountered a shoulder dystocia, CNM Watkins failed to recognize the shoulder dystocia and utilize appropriate shoulder dystocia delivery techniques.  Instead, CNM Watkins applied excessive lateral traction on baby's head and shoulder resulting in a severe "right" brachial plexus injury.

32.     K.J. was born on January 12, 2022, with a nuchal cord (the umbilical cord wrapped around her neck), which explained the numerous variable, late, and prolonged FHR decelerations that occurred throughout the night and morning.

33.     Immediately following delivery, K.J.'s right arm appeared dead and flaccid. Apart from the arm, K.J. was otherwise healthy, and she was discharged from the hospital with her mother on or about January 14, 2022.

34.     K.J. sustained a severe brachial plexus injury to her right shoulder, arm, and hand, and was diagnosed with Erb's palsy as birth trauma. She endured months of physical therapy with little or no progress; she could only slightly move her right arm, was unable to grasp, and her arm was internally rotated.

35.     On May 19, 2022, K.J. was evaluated by pediatric neurosurgeon Christopher Gegg, M.D., of Nemours Children's Health, who diagnosed a non-healing right upper-extremity brachial plexus birth injury affecting principally the upper trunk (C5 and C6) and also the middle trunk (C7), with adhesion to a neuroma. Dr. Gegg determined that K.J. was a surgical candidate.

36.     On July 22, 2022, K.J. underwent surgery performed by Dr. Gegg, including a brachial plexus neurectomy with grafts, repair of the right brachial plexus, and a nerve pedicle transfer (first stage), entailing reconstruction of the upper trunk of the brachial plexus and transfer

of the accessory nerve to the suprascapular nerve. The surgical findings revealed full avulsion of the nerve roots at C5 and C6.

37.     The surgery provided little improvement in elbow function and as a result, a second surgery was performed on September 22, 2023, called an Oberlin Transfer that entailed connecting the ulnar nerve to the musculotaneous nerve that goes to the biceps.     Since that time, K.J. has undergone continued follow-up care. Despite the surgeries and treatment, K.J.'s right arm and hand remain have limited function and use, her injury is permanent and K.J. will suffer from this affliction/disability for the remainder of her life.   It is expected that in addition to the emotional and physical pain and suffering K.J. will experience for the rest of her life, she will also  require future surgical, medical, therapeutic, and life-care services for the remainder of her life. Additionally, K.J.'s parents have suffered emotional pain and suffering as the result of K.J.'s injuries and they are expected to suffer said emotional pain and suffering for the duration of their lives.

38.     CNM Baker's negligence resulted in CNM Watkins performing K.J.'s delivery. Therefore, CNM Baker, and United State of America are responsible for CNM Watkin's negligent delivery of the child and the resulting injuries K.J. and her parents have suffered.

## COUNT I

## F.T.C.A. CLAIM AGAINST THE UNITED STATES OF AMERICA
## FOR NURSE-MIDWIFERY NEGLIGENCE COMMITTED BY
## KIMONA BAKER, CNM

Plaintiffs reallege and incorporate paragraphs 1 through 38 as though fully set forth herein.

39.     At all times material, a nurse-midwife/patient relationship existed between Kimona Baker, CNM, and Plaintiffs Veronica Johnson and K.J. and, through Ms. Baker as its deemed employee, between the United States and Plaintiffs Veronica Johnson and K.J.

40.     By virtue of that relationship, the United States, through Kimona Baker, CNM, owed Plaintiffs Veronica Johnson and K.J. a duty to render nurse-midwifery care and treatment in accordance with that level of care, skill, and treatment which is recognized as acceptable and appropriate by reasonably prudent similar health care providers under Florida law.

41.     The prevailing professional standard of care required, among other things, that:

a.  a CNM manage only patients with normal labors and reassuring FHR tracings, and recognize when a patient's condition exceeds the scope of nurse-midwifery practice;

b.  upon becoming aware of abnormal or non-reassuring FHR tracings, a CNM notify the collaborating physician of the abnormal patterns and request the physician's presence at the hospital;

c.  a CNM timely and appropriately initiate and utilize available intrauterine resuscitation measures, including lateral repositioning, administration of oxygen, administration of an intravenous fluid bolus, amnioinfusion, medications such as terbutaline, and cessation of maternal pushing, in order to increase blood and oxygen flow to the baby; and

d.  when intrauterine resuscitation measures fail to correct a non-reassuring FHR, a CNM notify the collaborating physician to take over the management of the patient.

42.     Notwithstanding these duties, the United States, through Kimona Baker, CNM, breached the prevailing professional standard of care and committed the following acts and omissions, any one of which standing alone would constitute actionable negligence:

9

a. Negligently and/or carelessly failing to properly manage Ms. Johnson's labor and to intervene in a timely manner;

b. Failing to recognize and identify the non-reassuring FHR tracings, including variable decelerations, late decelerations, prolonged decelerations, and minimal to absent variability;

c. Failing to acknowledge and appropriately address the non-reassuring FHR tracings;

d. Failing to recognize that Ms. Johnson's labor and delivery had become complex and constituted an obstetrical emergency exceeding the scope of nurse-midwifery practice;

e. Failing to timely and appropriately initiate and utilize the available intrauterine resuscitation measures;

f. Failing to timely and appropriately notify and request a collaborating OB-GYN physician to intervene and take over the management of the patient in light of the non-reassuring FHR tracings and the complex nature of the labor and delivery;

g. Failing to timely and appropriately transfer the patient's care to an OB-GYN capable of performing a timely cesarean section or complex delivery;

h. Failing to recognize the patient's need for delivery by an OB-GYN and, as indicated, by cesarean section;

i. Failing to timely and appropriately evaluate, assess, monitor, and manage Ms. Johnson and her unborn baby during labor;

j. Negligently transferring management of the patient to CNM Watkins, whose level of care and treatment was exceeded by the patient and unborn baby's needs.

j. Failing to follow hospital policies and procedures that promoted patient safety;

k.  Failing to comply with, and to adhere to, the nurse-midwifery process and the requirements applicable to certified nurse midwives; and

l.  Such further care failures as may be established through discovery.

43.   As a direct and proximate result of the negligence of the United States, through Kimona Baker, CNM, K.J., CNM Marsha Watkins negligently delivered the baby as described above and as a K.J. sustained a severe and permanent right brachial plexus injury. Had CNM Baker complied with the prevailing professional standard of care and timely summoned and transferred the management of Ms. Johnson's labor and delivery to an OB-GYN, an OB-GYN would have assumed management of the labor and delivery and delivered K.J. by cesarean section or by an appropriate delivery technique, and K.J.'s brachial plexus injury would have been prevented.

44.   As a direct and proximate result of the foregoing negligence, K.J. and her parents, Veronica Johnson and Kieron Johnson, have suffered and claim any and all available damages under federal and Florida law, including but not limited to the following:

A. Damages claimed by K.J.:

(1)  For pain and suffering sustained by the minor in the past and in the future;

(2)  For loss of the capacity for the enjoyment of life sustained by the minor in the past and in the future;

(3)  For permanent and total disability sustained by the minor in the past and in the future;

(4)  For the loss of the capacity to earn money and/or be gainfully employed, said loss to be sustained by the minor in the future;

(5)  For disfigurement and scarring sustained in the past and to be sustained in the future;

(6) For mental anguish sustained by the minor in the past and to be sustained in the future;

(7) For all economic damages sustained on account of the injury to the minor, including medical expenses incurred in the past, medical expenses to be incurred in the future, and supportive, palliative, rehabilitative, nursing care, and life-care needs to be sustained by the minor for the remainder of her life; and

(8) For all other damages provided for and appropriate under federal and Florida law as a result of the injuries sustained by the minor.

B. Damages claimed by Veronica Johnson:

(1) Past and future non-economic damages, including but not limited to mental pain and suffering; and

(2) Past and future loss of filial consortium.

C. Damages claimed by Kieron Johnson:

(1) Past and future non-economic damages, including but not limited to mental pain and suffering; and

(2) Past and future loss of filial consortium.

**WHEREFORE**, Plaintiffs, VERONICA JOHNSON, individually, and KIERON JOHNSON, individually, and as parents and natural guardians of K.J., a minor, demand judgment for the damages listed above against Defendant, UNITED STATES OF AMERICA, in amounts not to exceed the sums presented in Plaintiffs' administrative claims, together with taxable costs and such other and further relief as this Court deems just and proper.

## COUNT II

## F.T.C.A. CLAIM AGAINST THE UNITED STATES OF AMERICA FOR THE CORPORATE NEGLIGENCE OF SUNCOAST COMMUNITY HEALTH CENTERS, INC.

Plaintiffs reallege and incorporate paragraphs 1 through 38 as though fully set forth herein.

44.    At all times material, Suncoast Community Health Centers, Inc. (a/k/a Suncoast Healthcare Women's Care) was a deemed federally supported health center, and the United States is answerable under the FTCA for the negligence of Suncoast and its deemed employees committed within the scope of the deemed federal employment.

45.    Suncoast owed Plaintiffs a duty to exercise reasonable care in the hiring, training, retention, and supervision of its employees, including Kimona Baker, CNM, consistent with the prevailing professional standard of care for like facilities.

46.    Suncoast breached that duty by negligently and/or carelessly hiring, training, retaining, and/or supervising its employees, including Kimona Baker, CNM, thereby permitting a CNM, without appropriate physician collaboration and oversight, to serve as the sole attending provider for a complex labor and delivery marked by persistent non-reassuring, Category II FHR tracings.

47.    As a direct and proximate result of the corporate negligence of the United States, through Suncoast Community Health Centers, Inc., K.J. sustained the severe and permanent right brachial plexus injury described above, and K.J. and her parents, Veronica Johnson and Kieron Johnson, have suffered and claim any and all available damages under federal and Florida law, including but not limited to the following:

A. Damages claimed by K.J.:

(1) For pain and suffering sustained by the minor in the past and in the future;

(2) For loss of the capacity for the enjoyment of life sustained by the minor in the past and in the future;

(3) For permanent and total disability sustained by the minor in the past and in the future;

(4) For the loss of the capacity to earn money and/or be gainfully employed, said loss to be sustained by the minor in the future;

(5) For disfigurement and scarring sustained in the past and to be sustained in the future;

(6) For mental anguish sustained by the minor in the past and to be sustained in the future;

(7) For all economic damages sustained on account of the injury to the minor, including medical expenses incurred in the past, medical expenses to be incurred in the future, and supportive, palliative, rehabilitative, nursing care, and life-care needs to be sustained by the minor for the remainder of her life; and

(8) For all other damages provided for and appropriate under federal and Florida law as a result of the injuries sustained by the minor.

B. Damages claimed by Veronica Johnson:

(1) Past and future non-economic damages, including but not limited to mental pain and suffering; and

(2) Past and future loss of filial consortium.

C. Damages claimed by Kieron Johnson:

(1) Past and future non-economic damages, including but not limited to mental pain and suffering; and

(2) Past and future loss of filial consortium.

**WHEREFORE**, Plaintiffs, VERONICA JOHNSON, individually, and KIERON JOHNSON, individually, and as parents and natural guardians of K.J., a minor, demand judgment for the damages listed above against Defendant, UNITED STATES OF AMERICA, in amounts not to exceed the sums presented in Plaintiffs' administrative claims, together with taxable costs and such other and further relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, VERONICA JOHNSON, individually, and KIERON JOHNSON, individually, and as parents and natural guardians of K.J., a minor, respectfully demand judgment against the Defendant, UNITED STATES OF AMERICA, for all compensatory damages available under applicable Federal and Florida in amounts not to exceed the sums presented in Plaintiffs' administrative claims, together with taxable costs of this action and such other and further relief as this Court deems just and proper.

Dated: July 6, 2026.

Respectfully submitted,

**MALLARD & SHARP, P.A.**
Counsel for Plaintiffs
7685 S.W. 104th Street, Suite 200
Miami, Florida 33156
Telephone: (305) 461-4800
Facsimile: (305) 397-2557
Primary E-mail: bo@mslawcenter.com
Secondary E-mail: tracy@mslawcenter.com

By: /s/ _____
RICHARD B. SHARP, ESQ.
Florida Bar No. 0269890
VIDIAN C. MALLARD, ESQ.
Florida Bar No. 110980